IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 06-cv-02269-JLK

INFORMATION NETWORK FOR RESPONSIBLE MINING ("INFORM"), and
COLORADO ENVIRONMENTAL COALITION ("CEC")

      Plaintiffs

v.

BUREAU OF LAND MANAGEMENT,
a federal agency within the Department of the Interior

      Defendant.

---

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Kane, J.

This matter arises from a request by Plaintiffs Information Network for Responsible Mining and the Colorado Environmental Coalition (collectively "INFORM") to the Defendant United States Bureau of Land Management ("BLM") for certain agency records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a). It is before me on the parties' cross-motions for summary judgment. For the reasons stated below, I deny the BLM's motion and grant INFORM's motion in part and deny it in part.

### Background

The following facts are undisputed:

On July 12, 2006, the United States Department of Energy ("DOE") released for public comment its draft Programmatic Environmental Assessment ("draft PEA") for the Uranium Leasing Program it manages on government-owned lands in western Colorado. The DOE prepared the draft PEA in accordance with the National Environmental Protection Act

("NEPA"), 42 U.S.C. § 4321 *et seq.*, to assess the environmental impact of alternative management strategies for the Uranium Leasing Program over the next decade. Many of the federally owned lands included in the DOE's Uranium Leasing Program are administered by the BLM.

As required by NEPA's implementing regulations, the draft PEA included a list of the persons and agencies consulted by the DOE in preparing the environmental assessment. This list identifies 24 BLM employees from the BLM's Field Offices in Grand Junction, Montrose, Durango and Dolores, as well as employees with the U.S. Fish and Wildlife Service and the Colorado Division of Wildlife.

On July 13, 2006, INFORM submitted a written request to the BLM's Colorado State FOIA Officer for "all agency records under the control or possession of the Bureau of Land Management that were created or obtained after January 1, 1995 regarding the activities under consideration in the recently released Uranium Leasing Program Draft Programmatic Environmental Assessment." Pls.' Am. Mot. for Summ. J. (Doc. 11), Ex. 1. To assist the BLM in locating these records, INFORM identified each of the 24 BLM employees the DOE had listed in the draft PEA as agency personnel likely to have responsive records. It did not, however, limit its FOIA request only to responsive records in the control or possession of these individuals. On July 14, 2006, the BLM State Director acknowledged in writing that the agency had received INFORM's FOIA request.

Under FOIA, the BLM was required to notify INFORM whether it would comply with the FOIA request within 20 working days of receiving it. *See* 5 U.S.C. § 552(a)(6)(A)(I);

43 C.F.R. § 2.12(a). The BLM did not make a compliance determination or otherwise respond to the FOIA request by this statutory deadline.

After three more months passed without any BLM action on its FOIA request, INFORM filed this action, asserting the BLM had violated FOIA by failing to respond to its FOIA request in a timely manner and by illegally withholding agency records that were subject to disclosure under FOIA. Two months later, when the BLM still had not responded to its FOIA request, INFORM moved for summary judgment, seeking a declaratory judgment that the BLM was in violation of FOIA and an order requiring the agency to produce all records responsive to the July 2006 FOIA request immediately.

On January 31, 2007, the BLM filed its response to INFORM's motion, as well as a cross-motion for summary judgment. The following day, the BLM mailed INFORM's counsel a box containing a letter from the BLM Colorado State Director responding to the July 13, 2006 FOIA Request and six documents the agency had identified as responsive to this request. Four of these documents, constituting 226 of the 231 total pages produced, were heavily redacted. The BLM justified the redactions by reference to FOIA Exemption 5, which allows federal agencies to withhold documents falling within the deliberative process privilege.

In its January 31 response and cross-motion, the BLM asserted this tardy response to INFORM's FOIA request was a complete response to this request that cured the agency's admitted failure to act in the time period mandated by FOIA and mandated dismissal of this action. INFORM maintains the BLM's February 1, 2007 response is both untimely and incomplete, that the agency continues to withhold responsive documents in violation of the statute, and that summary judgment should therefore be entered in its favor.

**Standard of Review**

FOIA actions are typically decided on motions for summary judgment. *See Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 369 (11th Cir. 1993). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, the parties file cross-motions for summary judgment, I am "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997). A material fact is one that might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). In reviewing the parties' cross-motions, I must construe all inferences in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins. Co.*, 229 F.3d 1008, 1010 (10th Cir. 2000).

**Discussion**

I.   Timeliness of Agency Response

INFORM's first cause of action alleges the BLM violated FOIA by failing "to timely and lawfully respond" to INFORM's July 13, 2006 FOIA response and that it continues to violate the statute by failing to "fully produce agency records responsive" to this request. Complaint, ¶¶ 41, 42.

It is undisputed that the BLM's February 1, 2007 response to INFORM's FOIA request, filed months after the statutory deadline and after INFORM commenced this action to compel a

response, violated the 20-day response deadline mandated by FOIA.  As a result, I find the BLM violated FOIA by failing to comply with this statutory deadline and that this failure resulted in an improper withholding under FOIA.  *See Oregon Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006); *Gilmore v. United States Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998); *see also Long v. Internal Revenue Serv.*, 693 F.2d 907, 910 (9th Cir. 1982) ("unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses").

The BLM does not dispute this finding, but argues its violation is of no consequence as a result of its February 1, 2007 response and document production.  As I have previously noted, there is room for disagreement under the law as to whether this might be the case when judgment against an agency is sought based only on its failure to respond to a FOIA request by the statutory deadline.  *Compare Oregon Natural Desert Ass'n*, 409 F. Supp. 2d at 1248 (granting summary judgment on FOIA timeliness claim, holding "an untimely response is a violation of FOIA, regardless of final outcome of request") *with Information Network for Responsible Mining v. United States Dep't of Energy*, No. 06-cv-02271, 2008 WL 762248 (D. Colo. Mar. 18, 2008) (dismissing timeliness claim as moot following agency's tardy but complete record production).  There is no disagreement, however, that a failure to produce responsive records is a continuing FOIA violation.  *See* 5 U.S.C. § 552(a)(3).  INFORM alleges this continuing violation in both its First and Second Claims for Relief.  Accordingly, I must assess the adequacy of the BLM's response to INFORM's FOIA request to decide the parties' cross-motions for summary judgment on these claims.

II.     Adequacy of Agency Response

FOIA provides the public with a broad right of access to federal agency records subject to nine specific exceptions. *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 941 (10th Cir. 1990). The purpose of the Act "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Consistent with this purpose, the courts uniformly hold that FOIA is to be construed broadly in favor of disclosure, and that its exceptions are to be narrowly construed. *See, e.g.*, *id.*; *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1226 (10th Cir. 2007).

The BLM, as the federal agency resisting disclosure in response to a FOIA request, bears the burden of justifying nondisclosure. *Trentadue*, 501 F.3d at 1226. It also bears the burden of demonstrating that it conducted a "reasonable search" for the requested agency records. *Patterson v. Internal Revenue Serv.*, 56 F.3d 832, 840 (7th Cir. 1995). I must determine *de novo* whether the agency's search was reasonable and whether its decision not to disclose requested materials was proper under the statute. *See United States Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 755 (1989); *Anderson*, 907 F.2d at 941.

A.      Reasonableness of search

FOIA requires an agency presented with a FOIA request to conduct a search that is "'reasonably calculated to uncover all relevant documents.'" *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (quoting *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)); *see Maynard v. Central Intelligence Agency*, 986 F.2d 547, 559 (1st Cir. 1993). The reasonableness of the agency's search for responsive

documents depends on the facts of each case. *Maynard*, 986 F.2d at 559. The search need not be exhaustive to meet the reasonableness standard, *Miller*, 779 F.2d at 1383, but an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Miller*, 779 F.2d at 1383. "A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." *Maynard*, 986 F.2d at 560; *see Oglesby*, 920 F.2d at 68 (agency must provide "a reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched.").

In this case, INFORM requested "all agency records under the control or possession" of the BLM that "were created or obtained after January 1, 1995" regarding the activities considered in the draft PEA. It further identified 24 BLM employees located in the BLM's Grand Junction, Uncompahgre, San Juan and Dolores Field Offices as "agency personnel likely to have responsive records" based on DOE's statement in the draft PEA that it had consulted with these individuals in preparing the document. Through the declaration of its FOIA officer, however, the BLM states it searched only one file for responsive documents, the "project file" maintained by one of the named BLM employees, Teresa Pfifer in the BLM's Uncompahgre Field Office, in her capacity as the agency's Project Manager for the PEA. The BLM's FOIA officer asserts "all documentation created or obtained after January 1, 1995 regarding the

activities under consideration in the Uranium Leasing Program Programmatic Environmental Assessment is filed in the project file" and, therefore, all documents responsive to INFORM's FOIA request "would only reasonably be expected to be found" in this file. Defs.' Cross-Mot. for Summ. J. (Doc. 14), Ex. A-2 (Caufield Decl.), ¶¶ 5-6. As a result, the BLM admits it did not search any other files or locations for responsive records. *Id.*, ¶ 6.

This declaration does not meet the agency's burden of demonstrating a search reasonably calculated to locate all responsive documents. It merely asserts, in conclusory terms and without any accompanying detail or explanation, that all documents created or obtained by the BLM regarding the "activities under consideration" in the draft PEA, *i.e.*, the future of the DOE's Uranium Leasing Program in western Colorado, were located in the single file it searched. The draft PEA and INFORM's FOIA request on their face are positive indications that responsive records are likely to be located in the files of the 24 BLM employees the DOE reports it consulted with in preparing the draft PEA. *See Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (agency may not ignore "positive indications of overlooked materials"). The BLM does not provide any explanation or support for its conclusion that all responsive documents created or obtained by these 24 individuals came to be located only in the official project file. That only six responsive documents were located in the project file also calls the BLM's assertion into question. Furthermore, there is no indication that the agency made any effort to determine whether BLM personnel in any other office, such as the office of the BLM's Colorado State Director or the BLM's national office, participated in the agency's decision-making regarding the PEA and DOE's Uranium Leasing Program and thus may have responsive records in their control or possession. *See Friends of Blackwater v. United States*

*Dep't of Interior*, 391 F. Supp. 2d 115, 121-22 (D.D.C. 2005) (agency required to refer request to another office if office is reasonably likely to contain responsive records).  The declarations submitted by the BLM do not, therefore, demonstrate that the BLM made a reasonable search for responsive documents.

In addition, there is other evidence that calls into question the adequacy of the BLM's search for responsive documents.  Specifically, in response to a July 13, 2006 FOIA request to the United States Fish and Wildlife Service regarding the draft PEA, INFORM obtained two letters regarding the PEA or activities considered in it that list BLM personnel as recipients.[1]  Neither letter or related correspondence was produced by the BLM in response to INFORM's FOIA request or identified in its *Vaughn* index of withheld documents.[2]  The documents INFORM obtained from the Fish and Wildlife Service constitute evidence that responsive documents are likely contained in other BLM offices and files not searched by the agency, and further support my finding that the BLM's search for responsive documents was inadequate under the undisputed facts.  Summary judgment may be entered against the BLM and for INFORM on this basis alone.  *See Friends of Blackwater*, 391 F. Supp. 2d at 121-22 (entering summary judgment for FOIA requester on finding agency conducted inadequate search).

---

[1]  "R. Renker, Bureau of Land Managment," was copied on the first document, a letter dated August 10, 2005 from DOE NEPA Document Manager Richard P. Bush to Al Pfister, District Manager, U.S. Fish and Wildlife Service, that invited the Fish and Wildlife Service to participate as a cooperating agency in preparation of the PEA.  *See* Pls.' Reply (Doc. 20), Ex. 10.  Kathy Nickell, of the BLM's San Juan Field Office, is copied on the second document, a letter dated November 3, 2005 from Allan R. Pfister of the Fish and Wildlife Service, to Steve Boyle of BIO-Logic Environmental.  *Id.*, Ex. 11.  Nickell is one of the 24 BLM employees identified in INFORM's FOIA request.  Renker is not.

[2]  A *Vaughn* index is "a compilation prepared by the government agency . . . listing each of the withheld documents and explaining the asserted reason for its nondisclosure."  *Anderson*, 907 F.2d at 940 n.3; *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

B.      Documents withheld under Exemption 5

The BLM invoked FOIA Exemption 5 to justify withholding significant portions four of the six documents it identified as responsive to INFORM's FOIA request.[3] According to the *Vaughn* index the BLM provided regarding the withheld information, it consists of "comments and recommendations regarding environmental analysis and impacts" and text from the draft PEA BLM reviewed that the DOE did not include in the draft PEA it ultimately released to the public for comment.

Whether a FOIA exemption justifies withholding an agency record is a question of law. *Trentadue*, 501 F.3d at 1226.  To decide this question, I must "determine whether all of the requested materials fall within an exemption to the FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts." *Anderson*, 907 F.2d at 941.  I also must ensure that I have an adequate factual basis on which to base my decision.  *See id.* at 942.

Exemption 5 excuses disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption encompasses documents that fall within the "deliberative process" privilege, which shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  Only documents that are both predecisional and

---

[3] The BLM reported in its *Vaughn* index that it redacted, *i.e.*, withheld, information from 151 of the 226 pages contained in these four documents, or two-thirds of the pages contained in these documents.

deliberative fall within the scope of this privilege. *Trentadue*, 501 F.3d at 1227. The privilege does not extend to factual information contained in an otherwise deliberative agency document unless disclosure of this information "would so expose the deliberative process within an agency that it must be deemed exempted." *Id.* at 1228 (internal quotation omitted).

The purpose of the deliberative process privilege is primarily "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Id.* at 8-9. In the FOIA context, however, consistent with FOIA's general policy of broad disclosure, the Tenth Circuit has emphasized that the deliberative process privilege "is to be construed as narrowly as [is] consistent with efficient Government operations." *Trentadue*, 501 F.3d at 1227 (quoting S. Rep. No. 89-813, at 9 (1965)).

INFORM argues initially that the information withheld by the BLM must be disclosed pursuant to an exception to Exemption 5 stated in NEPA's implementing regulations. This exception makes "environmental impact statements, the comments received, and any underlying documents available to the public pursuant to [FOIA], without regard to the exclusion for interagency memoranda where such memoranda transmit comments of the Federal agencies on the environmental impact of the proposed action." 40 C.F.R. § 1506.6(f).

The BLM asserts this exception does not apply here because it only covers federal agency comments submitted during a publically noticed comment period on a draft NEPA document made available by the authoring federal agency for this purpose. Here, the comments and other materials the BLM has refused to produce pertain to an earlier, "working" draft PEA, that the DOE provided to the BLM and other agencies for comment before DOE issued its "official" draft PEA for public comment in July 2006.

11

The NEPA regulation at issue does not support the distinction between comments on "working" and "official" drafts urged by the BLM. However, the regulation expressly states that it exempts only "environmental impact statements," comments thereon, and any underlying documents from Exemption 5. 40 C.F.R. § 1506.6(f). The draft document at issue here is not an environmental impact statement (EIS), but rather a programmatic environmental assessment (EA). An EA is a distinct, relatively concise NEPA review document whose purpose is to provide sufficient evidence and analysis for the federal agency having jurisdiction over a proposed action to determine whether the action will have a significant effect on the human environment. *See id.* § 1508.9. If the federal agency decides based on the EA that the answer is yes, then it continues with the NEPA review process to prepare a much more detailed EIS on the proposed action. *Id.* §§ 1508.9, 1501.4(b)-(c). If the answer is no, then the agency issues a Finding of No Significant Impact (FONSI) and the NEPA review process for the proposed action ends. *See id.* §§ 1508.9, 1508.13.

INFORM assumes the regulatory exception to application of Exemption 5 in the EIS context also applies when a federal agency prepares an EA and receives comments on it. It provides no authority or argument in support of this assumption, however. As a result, I have no basis for looking past the plain language of the regulation to hold that it requires disclosure of the draft PEA and comments on it that the BLM has withheld pursuant to Exemption 5.

This determination does not, however, end my review of the BLM's decision to withhold the disputed materials pursuant to Exemption 5. As noted earlier, the BLM still has the burden of demonstrating that the redacted materials are both predecisional and deliberative and hence exempt from disclosure under this exemption. *See Trentadue*, 501 F.3d at 1227. The BLM

argues it has met its burden with respect to both criteria through its submission of the *Vaughn* index and declarations of Adrian Caufield, an acting FOIA Specialist with the agency.

I agree that the BLM has demonstrated that each of the four redacted documents are predecisional. Draft agency documents, such as the February 2006 draft PEA and the BLM's imbedded internal draft comments on it (Doc. # 2 in the *Vaughn* index), by definition are predecisional documents. Comments or advice from one agency to a second agency having decisional authority are also considered predecisional. *See Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 188 (1975); *Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice*, 742 F.2d 1484, 1497 (D.C. 1984). The communications between the BLM, the cooperating agencies and the DOE regarding the DOE's draft PEA (Doc. # 1, 3, 4) are, therefore, predecisional documents within the meaning of the deliberative process privilege and Exemption 5.

I cannot agree, however, that the BLM has met its burden of demonstrating that the information it redacted from Document Nos. 1-4 is deliberative and therefore exempt from disclosure. A *Vaughn* index and supporting declarations will satisfy an agency's burden on this issue only if they are detailed enough "to permit the court to determine whether a sufficient factual basis exists to support the agency's refusal to disclose the information at issue." *Public Employees for Envtl. Responsibility v. United States Envtl. Protection Agency*, 978 F. Supp. 955, 960 (D. Colo. 1997) (citing *Anderson*, 907 F.2d at 942); *see Greyson v. McKenna & Cuneo*, 879 F. Supp. 1065, 1068 (D. Colo. 1995) (agency affidavits sufficient basis on which to grant summary judgment in FOIA cases if they describe, "with reasonable detail, the reasons for non-disclosure" and "demonstrate[] a logical relationship between the withheld information and the

claimed exemption."). Documents that "provide insufficient detail, lack specificity, and offer only conclusory statements" do not suffice. *Public Employees*, 978 F. Supp. at 960.

Here, the BLM's stated reason for heavily redacting 151 pages of responsive records is that all the redacted information constitutes "comments and recommendations regarding environmental analysis and impacts" that "reflect[] interagency dialogue" and are "deliberative and predecisional." *See* Def.'s Mot. for Summ. J. (Doc. 14), Ex. A-3 (*Vaughn* Index), Ex. A-2. For Document Nos. 2-4 in the *Vaughn* index, the BLM further states that the redactions "contain[] various resource specialists' analysis of draft material, point[] out areas of concern, and provide[] recommended changes." *Id.*

These general and summary statements, applied to 151 pages of material, are not sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA. In particular, these descriptions suggest that at least some of the redacted material is factual in nature. *See, e.g., id.* (redacted information includes comments regarding "environmental . . . impacts"). The BLM in fact acknowledges that this is the case. As a general rule, factual information is not within the scope of the deliberative process privilege and Exemption 5. *See EPA v. Mink*, 410 U.S. 73, 89 (1973) (Exemption 5 . . . requires different treatment for material reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other."); *Trentadue*, 501 F.3d at 1227, 1228.

The BLM asserts through the Caufield declarations that all factual material in the 151 redacted pages is so intertwined with deliberative materials that it cannot be segregated and disclosed and, further, that disclosure of this information would reveal the deliberative process. Either of these circumstances, if substantiated, would justify withholding factual materials under

14

Exemption 5.  *See Trentadue*, 501 F.3d at 1229.  The BLM has not, however, provided sufficient information for me to determine whether either of these circumstances exist as to all or some of the redacted information.

The Tenth Circuit requires that the agency seeking to withhold all or part of a deliberative document conduct a detailed analysis to determine whether factual or other non-exempt material can be severed from privileged material and produced.  *See id.* at 1230-31.  In making this determination, the Tenth Circuit has warned that factual material cannot be withheld on the ground that it would reveal the deliberative process "simply because it reflects a choice as to which facts to include in a document." *Id.* at 1229.  Instead, the court has made clear that it takes a narrower view than some other courts regarding the circumstances under which factual materials fall within the scope of the deliberative process privilege.  *See id.* at 1227-29.  It has further declared that a reviewing court has a duty to determine whether any factual materials can be segregated from deliberative materials and disclosed as required by FOIA.  *See id.* at 1230-31.  The BLM's blanket, conclusory statements that all factual materials in 151 pages of agency records are too intertwined with deliberative materials to be segregable or too revealing of the deliberative process to be disclosed provide me with no basis on which to make the necessary determination with respect to any particular redaction or set of redactions.

The examination the Tenth Circuit undertook with respect to the documents at issue in *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1229-32 (10th Cir. 2007), illustrates the level of review and analysis required to justify withholding all or part of an agency record under the deliberative process privilege and FOIA Exemption 5.  While this review may not require a separate description and justification for each redaction, it certainly requires more specificity and

detail regarding the redactions or sets of redactions than the conclusory assurance given by the BLM that any factual or otherwise non-exempt material contained in its agency records is non-segregable and privileged from disclosure.

Conclusion

For the reasons stated above, the BLM has not carried its burden of showing that the material it redacted from documents responsive to INFORM's FOIA request is properly withheld under Exemption 5. Nor has it met its burden of showing it conducted a reasonable search for documents responsive to INFORM's FOIA request. As a consequence, the BLM's Cross-Motion for Summary Judgment (Doc. 14) is DENIED.

INFORM's Amended Motion for Summary Judgment (Doc. 11) is GRANTED in part based on my further determination that, under the undisputed facts, the BLM has violated FOIA by failing to timely respond to INFORM's FOIA request, by failing to conduct a reasonable search for documents responsive to this request and by withholding information from the responsive agency records it has thus far identified without adequately demonstrating that this information was exempt from disclosure under FOIA. INFORM's motion is DENIED, however, to the extent it seeks immediate disclosure of the portions of the currently identified documents that have been withheld under Exemption 5. For the reasons stated above, I do not at this time have an adequate factual basis to determine whether any or all of the redacted information must be disclosed.

I therefore ORDER the BLM to conduct a search consistent with the standards stated in this decision for additional documents responsive to INFORM's July 13, 2006 FOIA request. In addition, the BLM shall review any newly identified responsive documents and Document

Nos. 1-4 in the *Vaughn* index it submitted on January 31, 2007 under the standards stated herein and by the Tenth Circuit in *Trentadue* to determine whether information in these documents must be disclosed. The BLM shall complete this search and review and release all responsive documents not subject to a properly asserted FOIA exemption within 30 days of the date of this order.

For any information in the currently or any newly identified documents that the BLM maintains is protected from disclosure under Exemption 5, within 30 days of the date of this order it must prepare and submit a revised *Vaughn* index providing sufficient detail for me to review this agency determination. If I find the BLM's revised *Vaughn* index inadequate for this purpose, I will review the withheld or redacted documents *in camera*, mindful of my duty under *Trentadue* to order disclosure of all factual or other information that can be segregated and disclosed without exposing the agency's deliberative process.

With respect to its request for attorney fees and costs, INFORM may file a separate request to recover these fees and costs after the BLM complies with this order.

Dated this 28th day of April, 2009.

                                                        s/John L. Kane
                                                        John L. Kane, Senior District Judge
                                                        United States District Court